Appellant. Mr. Katzoff for the Appellant. Mr. Lernitz for the Appellate. Good morning, Mr. Katzoff. Good morning, Howard Katzoff. I actually represent Erin Forb and I'm joined by Mary Davis who represents Melvin Knight. Appellants raised two joint issues. I'm going to submit on the first issue a motion to dismiss on speedy trial claim grounds and discuss the second argument that appellants were denied their effective assistance of counsel when their attorneys failed to properly advise them of plea offers to one count of assault with a dangerous weapon, which at that time was a zero to ten. What about the sentencing issue? Is that yours? That's mine. I'm going to argue that time permitting. But that's not a joint issue. It's just my issue. The right to effective assistance of counsel obviously has been recognized in the plea bargaining context and there have been some significant cases in the past several years. This case seems to fall somewhere between Missouri v. Fry and Lafler v. Cooper in the sense that in Missouri v. Fry it was clear that there was no, the plea offer was never conveyed to the client. In Lafler v. Cooper there was erroneous advice that was given to the client that led to a rejection of a plea. In this case there was a formal offer put on the record of the extremely favorable plea to the ADW, the tenure offense. There was an expiration date on that and when the parties came back to court the record is very, very unclear as to any real advice discussions between attorney and client. You want us to remand this? Yes. I submit that remand is the appropriate remedy. I don't think that the court could conclude on the record that Your point is just that there's enough there to, under our practice, support a remand. Correct. And that clearly there is not enough to conclusively show what the government suggests it shows and that is that there was clear advice, clear rejection, no intelligent, voluntary rejection of the plea. Let me stop you. They were both there in court, right? Correct. And the AUSA said it's wired, here's what it is. They rejected it and they said nothing. Or am I wrong? Well, Mr. Thorpe's counsel said something to the effect of there was some discussion, this is wired, I can't really say either way for Mr. Thorpe, but because it's wired it didn't appear there was any reason that I had to have any further discussion with Mr. Thorpe. That's sort of the spirit of the statement that was made by Mr. Thorpe. The government at one point I think says both rejected, but it's pretty clear that even accepting that statement that there is a sort of what the government calls an acquiescence, which I would submit is not truly any acquiescence. So as to Mr. Thorpe, there was no rejection. As to Mr. Knight, there is silence it appears from what we could tell, but there's no, there's just no indication that this off the record discussion, what it involved, where it took place, who participated, what it meant, it's really almost impossible to tell. And most importantly in evaluating that we're dealing with an ineffective assistance of counsel claim. So the thrust and the heart and soul of the claim is that the lawyer didn't do what he was supposed to. So how can we assume that the fact that a lawyer didn't stand up and object and say, no, no, we want to take this or whatever might have been done flies in the face of the ineffective assistance allegations that just didn't do what the attorneys were supposed to do. And that is advise them of the plea offer, advise them of the benefits of the plea offer, the consequences of the plea offer, which were all very, very significant in this case. And I think much of it was put on the record, the possibility of the case being taken to federal court, the possibility of federal court charges being added, the possibility of offenses, several of which were multiple counts, 30 year maximums each for the kidnapping while armed, I believe a 30 year max offense, the burglary while armed is a 30 year offense. So what is the limit of your argument? In other words, a defendant could always argue ineffective assistance of counsel where counsel failed or remained silent. And the government's argument, as I understand it, is there were repeated opportunities and then even when the case went to federal court with new counsel, there was no reference to this issue. Well, if the government argues that, I think that they're wrong on the record. I think that we're dealing with one instance where the issue was addressed in court on February 19th at the hearing in Superior Court. And with regard to that, it's just really significant that there wasn't what we've come to call sort of a Missouri v. Frye inquiry because of the consequences that were here. The judge didn't make an inquiry to ask if the attorney had discussed the matter with the client at all, if the terms of the plea offer were explained, if they understood the terms of the plea offer, if they understood the potential consequences. None of the normal inquiry was done. And I remind you that it's in the record that my client is a borderline intellectually disabled with an IQ of 64. And so there's sort of a need for a judge or somebody or the government to request a Missouri v. Frye inquiry, which they often do, to make sure that it's understood. Otherwise, we are left in this situation but to no fault of the appellants because they're being represented by individuals they claim were providing constitutionally infirm representation. They can't stand up and defend themselves or protest or speak. It's not the appropriate protocol. They speak through their counsel. And if their counsel aren't doing their job, there's just no way from this record to discern that they were properly represented. So the answer is, in light of Frye, and since this is a constitutional claim, it certainly falls within any limit that there would be. Yes. I guess that's the shorter, the more condensed response in that sense. Are you saying the judge was deficient as well or just led astray by incompetent counsel? I mean, he had no way of knowing your client was mentally... But, you know, we're dealing with the U.S. attorney, which has a dual role and threatens to bring the case in federal court. And federal courts were routinely doing that at the time. And without casting aspersions on the judge, it would really be helpful for the record right now if that had been done. It wasn't done. And it just, I think, highlights the point that on the record that we have, both of these appellants claimed that they were not properly advised. And if they had been properly advised, they would have accepted it. And the only way to get to that point is a hearing. I reserve two minutes. I think I'm in my reserve time. Could I just be clear about one thing? You said on the speedy trial you're submitting on the briefs. In your reply brief, you didn't address that. So I wondered whether you'd just abandon that in view of our in-bank decision. It's a very difficult argument. My biggest problem was that the district court judge did not give any reasons for the denial. I felt an obligation to preserve the issue. So you are preserving the issue? I'm trying to preserve the issue. I'm not abandoning the issue. That's a yes or no? Yes. All right. I just felt I was not going to spend my time on it, but I felt it was an issue that should be preserved. All right. We'll give you a couple minutes. Mr. Lenners? Thank you, Your Honor. May it please the Court, Dan Lenners of the United States. Just to be clear on the timeline with regard to appellants in effect of the assistance of counsel, the government first put the plea offer on the record in open court with both defendants there on February 1st, 2013. Eighteen days elapsed, and the parties came back before the court for a detention hearing, at which point the prosecutor explained to the court that it was her understanding that both defendants had rejected the plea offer, that there would be no further plea offers at this time, and she put the plea offer on the record again in both defendants' presence. Neither defendant through their counsel nor counsel said they needed more time to consider the plea offer, that they didn't understand the plea offer. These defendants were not new to the judicial system. Both were on supervised release. They presumably understood what a plea offer was and what it entailed. And in fact, three months later, after the case had been indicted in federal court, the federal court prosecutor put on the record the fact that neither defendant was interested in even discussing a non-trial disposition. The defendants had new counsel at that time, they had federal court counsel, and again, they had no interest in even discussing a plea offer. But of course, the question really is the conversation that might have occurred between the defendants and counsel and the factual inquiry that's usually necessary to resolve that. We can't do that here, so why isn't this a case where we do our usual practice of remanding? Because the evidence shows that there's not a reasonable probability that both defendants would have accepted the plea offer but for this alleged ineffective assistance of their superior court counsel. These plea offers were wired. Defendants concede in their reply brief that there's no reason to believe they would have been unwired. And so in order for either defendant to succeed on his claim... But in an ordinary ineffective assistance claim, you would have testimony from the relevant parties about what they were thinking and their discussions, and we don't have that here, so... Typically, there would be some sort of evidentiary hearing or an affidavit from the defendant's attorney stating that he did in fact adequately explain the plea offer. So I've said this before, but I think it's very difficult for us to resolve these on direct appeal without having the district court take the first crack at it. In this case, to me at least, seems consistent with that usual practice. I certainly understand the court's hesitation, but this is an unusual case in that both defendants are claiming that both of their superior court counsel were both ineffective for failing to explain this plea offer. And in order to succeed on their ineffectiveness claim, they have to establish that both of them would have... So their claim, as it stands, is unlikely, just on its face, that both were constitutionally ineffective in the same fashion. Unlikely, but not impossible. Not impossible, Your Honor, but even more unlikely given that the plea offers... This isn't a case where the defendant can claim that the plea offer was never communicated to him because it was communicated to both defendants on the record twice, first on February 1st and again on February 19th. And once they had new counsel who they don't claim were ineffective in any fashion, they continue to have no interest in discussing a plea offer. And the court can also consider the fact that there are indicia in the record as to why the defendants would have rejected a plea offer. They were both on supervised release. The evidence was such that the magistrate hearing, the evidence in the detention hearing, said this is a case that's going to have to be sorted out at trial. I mean big time. But I don't think the requirement about communication is simply having the prosecutor state what the plea is. It's also counsel explaining to the defendant, you know, what the implications of this... I agree that has to be the nature of their claim. The nature of their claim cannot be my counsel never communicated the existence of a plea offer to me, which I think was that issue in Frye. But it's more than just saying the prosecutor has offered a plea. It's communicating what that means. I agree that that has to be the nature of their claim. Yeah, and there's none of that here on the record. There's nothing on the record. But to succeed, they have to show a reasonable probability that they both would have accepted the plea. And so your position is it's just totally improbable that they both would have accepted the plea? Yes, Your Honor, that the plea was communicated twice. It's improbable that both of their superior court counsel were ineffective in the same fashion in failing to explain to them the plea. You may be right, but we just don't know that. And I thought that's the thrust of Judge Kavanaugh's questions. You're asking us to make a lot of factual assumptions. I'm asking the court to review the record and apply the standard that it's applied in these cases, which is to remand for further development unless the record is clear one way or the other. The government's position is that the record is clear that these defendants could not succeed on the claim, not because the record is clear as to the advice they received, but because the record is clear that there's not a reasonable probability that both defendants would have accepted the plea, but for this alleged ineffectiveness. And unless the court has any questions on either the Speedy Trial Act claim or the sentencing issues, the government would submit and ask that the dish report be affirmed. So what is the government's position on the second sentencing issue? The defendants claim the judge changed the sentence, and the judge entered this order two days later. The judge didn't change the sentence, Your Honor. At sentencing, the judge announced that he was sentencing defendant Thorpe to 300 months, in other words, 25 years. The judge said 300 months, 25 years. He then explained a sentence or a count-by-count sentence in months and had a line that was ambiguous, particularly in turn contrasted with the total sentence, about certain counts running consecutive or concurrent. Why was that ambiguous? Only because of the reference to 300 months? I think it's ambiguous. We put in a footnote reasons why the court could find it ambiguous on its face, because the court was talking about like crimes. Counts 5 and 6 were like crimes, and counts 8 and 9 were like crimes. And so when the court, in a sort of awkward statement, said counts 5, 6, 8, and 9 consecutive to other counts but concurrent to each another, it's not exactly clear whether the court was, in fact, clumping 5 and 6 together and 8 and 9 together as it ultimately did in its order clarifying the sentences or whether it intended all four to run consecutive to other counts but concurrent to each of the other three. And particularly contrasted with the court's unambiguous statement that it intended to sentence the defendant to 300 months, the order clarifying the sentences was simply that, a clarification and not a change to the ultimate sentence, which was 300 months. All right. Thank you. Thank you. Does Mr. Patzalk have any time? Okay. Why don't you take a minute? I can do it in 13 minutes. Okay. I'll address just the last question that was asked by Judge Rogers. It appears to me in our argument is that the rule is that no remand is necessary on the sentencing issue if the court clarifies an oral pronouncement, but the court can't contradict or change. And our reading of what the court did with the clarifying order is that it changed the sentence. What about the government's footnote? Your Honor, I don't see it as being an ambiguity with regard to the changes that were made. What do you think the district court meant when it had that sort of run-on sentence? I'm just not sure. Only the court knows what the problem we're stuck with now is the rules that permit clarification of ambiguities, but not inconsistencies, and I think that's sort of the distinction. There's maybe an inconsistency within the overall sentence, but as to counts 5, 6, 8, and 9, if I have them correct, those were changed. They were increased. They're tantamount to substantive changes, which is illegal. That's the district court's argument. How would you distinguish our case in Love? Well, Love addresses ambiguities, and I think the rule that I just gave you is from Love, and it distinguishes or makes clear that if there's an ambiguity with regard to a sentence, then the ambiguity can be clarified. But here you have courts required to give a sentence for each count, and sentences are not final until the sentence on each count is imposed. He gave a sentence on each count. There's nothing ambiguous about his I'm giving you 300 months, that is, for 25 years. I mean, I see it as almost a computation error that was clarified, but I don't see anything ambiguous about the actual sentence of 300 months. The first sentence didn't appear to be ambiguous, but then the court gave a sentence as to each count, which also didn't seem to be ambiguous. It added up to 300 months. If it added up to 300 months, then I guess I agree with the court. But even if it didn't, in other words, to determine whether 300 months is wrong and a misstatement, or whether the statement within the individual counts is wrong, it's difficult to tell. But it's not your normal ambiguity. It's just an inconsistency that doesn't appear properly changed by a clarifying order two days after the sentence was imposed. Thank you. Mr. Katzoff, you were appointed to represent your client, and you've done your usual able job. We thank you and Ms. Davis as well. Thank you.
judges: Henderson, Rogers, Kavanaugh